This is an action of interpleader brought by the plaintiffs as stakeholders of a fund in the amount of $2425. The plaintiffs, who are sisters, reside in New York City. Through their deceased father they became the owners of twenty-nine acres located in Sharon, Connecticut, and of a commodious dwelling thereon. In 1945, and for some years prior thereto, they were desirous of selling this property. In August, 1943, they entered into a written contract with Previews, Incorporated, for the listing and publication of the property in a booklet annually edited by the corporation. In this manner a wide attention to properties on the market therein listed is brought to real-estate brokers and to members of the public. In addition to a stipulation in the contract providing for a retainer to the corporation and a final fee to it upon sale of the property, there is a further provision that the plaintiffs will pay "one standard full commission to the broker who makes the sale." This contract was in force on the dates hereinafter considered. On page 40 of the 1945 edition of Previews there appears a picture of the front of the house and a detailed description of the property in its entirety. The asking price therein specified is $85,000.
In late November, 1945, Mr. and Mrs. Morton-Smith of New York submitted an offer of purchase to the plaintiffs in the amount of $48,500 which was accepted. In preparing the closing papers the New York attorney for the plaintiffs recognized that the defendants Perkins and Walter of Brattleboro, Vt., comprising a partnership, might be in a position to assert *Page 326 
a claim for commission in whole or in part notwithstanding the fact that it was the defendant Cotter of Sharon through whom the Morton-Smiths submitted the offer which was accepted. The plaintiffs have been placed in a quandry. They are willing to pay a commission of 5 per cent of the purchase price but wish to avoid the expense, anxiety and inconvenience attending a lawsuit instigated by a broker whose claim they may deny in favor of another. Title to the property was finally conveyed to Mrs. Morton-Smith in January, 1946, for the price agreed upon, and the plaintiffs continue to hold the sum of $2425 for payment over to either or both sets of claimants-defendants as the court shall direct.
The defendants, as sole claimants to the fund, have filed their respective claims and have been heard upon them. In passing it may be noted that the procedure followed in the case is that outlined in the memoranda of the trial court in Blanchard v.Voghel, 12 Conn. Sup. 210 and 12 Conn. Sup. 213.
As between the two sets of defendants — Mrs. Cotter on the one hand and Messrs. Perkins and Walter on the other — the question presented is: Which is entitled to the commission as having constituted the efficient or effective procuring cause of the sale? There are cases in which two or more brokers have been held entitled to share a single commission on the theory of a "joint adventure." In the court's opinion the facts in the case at bar preclude adopting this theory and ordering a division of the fund. See cases collected in annotations appearing in 48 A. L. R. 1055, 1069 and 138 A. L. R. 968, 989.
The basis of the Perkins-Walter claim may be stated thus: The Morton-Smiths were interested in acquiring property located anywhere between northwestern Connecticut and central Vermont. In the office of the partners at Brattleboro on Saturday afternoon, October 20, 1945, Mrs. Morton-Smith, in company with her husband, remarked about the plaintiff's property, which was listed and described in her own copy of Previews at page 40, saying in substance: "Here's a place that would interest us but there are only 29 acres." Whereupon walter, who formerly lived in Sharon and who knew the neighborhood, stated that he thought adjoining property could be acquired to make up the shortage in acreage. He suggested that the Morton-Smiths go to Sharon and see Mrs. Cotter, who would show them over the property, adding that Mrs. Cotter had the keys to the house. Apparently Mrs. Cotter's interest *Page 327 
in the property was known to Walter through an independent listing of her own. The Morton-Smiths did go to Sharon and did look up Mrs. Cotter who took them upon the plaintiffs' property. The keys of the house were in the possession of the caretaker and had never been in her possession. The Morton-Smiths told Mrs. Cotter that Walter had suggested they look her up. It can be found that the interest of the Morton-Smiths in the plaintiffs' property was occasioned by the information given them by Walter that property adjoining that of the plaintiffs could be acquired for supplemental purposes.
Shortly after the Morton-Smiths were first shown the plaintiffs' property by Mrs. Cotter, they telephoned her from New York and asked that she make arrangement to have the house opened for further inspection by them, adding that she need not be present. This arrangement was made.
The basis of the Cotter claim may be stated thus: After she made the arrangement for further inspection referred to in the preceding paragraph, the Morton-Smiths had no further communication with her for a few weeks. Up to this time no figure had been given her by the Morton-Smiths to submit to the plaintiffs although she had told one of them that the Morton-Smiths might become interested in buying. During the interval when Mrs. Cotter heard nothing from the Morton-Smiths, they in turn had engaged a Mr. Thoms of Litchfield to make an offer of purchase to the plaintiffs and to the owner of adjoining property. Thoms was successful insofar as the adjoining property was concerned but his authorized proposition to the plaintiffs of $40,000 for their property was rejected by them. The Morton-Smiths, through Thoms, then brought Mrs. Cotter back into the picture. Thoms apparently realized that his efforts to acquire the plaintiffs' property at a figure within reach of his customers would prove futile. He is not a claimant here and has been paid by the Morton-Smiths as their personal agent.
Mrs. Cotter knew the plaintiffs for some time. The property had been listed with her since 1943 on a nonexclusive basis and she had made independent efforts to sell it. At one time she had a prospective purchaser for $45,000 but the offer was rejected. Acting now on behalf of the Morton-Smiths, Mrs. Cotter submitted various figures to the plaintiffs — $40,000, $45,000, $46,500 — for their acceptance. All were rejected as not being sufficient. On or about November 28, 1945, after telling the *Page 328 
Morton-Smiths that their offer would have to be substantially increased to effect an acceptance, Mrs. Cotter was authorized by them to submit the figure of $48,500, which proved to be acceptable.
It is to be further noted that Walter never had any contact with the plaintiffs and throughout the negotiations never had any contact by letter or telephone or other means with Mrs. Cotter, or she with him. His first knowledge of the sale or agreement of sale came after the New York attorney for the plaintiffs learned through Mr. Morton-Smith that Walter had initially suggested to him and his wife to see Mrs. Cotter. In passing it may be also noted that Walter telephoned another broker in Salisbury by the name of Robinson on the October afternoon the Morton-Smiths were in his Brattleboro office. Certain phases of the evidence strongly suggest that Walter had in mind that Robinson and he act in concert respecting the possible sale of the plaintiffs' property to the Morton-Smiths. It is not necessary to develop further this aspect beyond this brief reference.
The application of the following principles are deemed decisive of the defendant Cotter's right to the commission held as a fund by the plaintiffs, less deductions asked by the plaintiffs for expenses incurred in this action:
1. "Where two or more brokers without exclusive authority to sell, play some part in a transaction of sale, each contributing something to bring about the resulting sale, each is not entitled to a commission or to share in the commission paid. Some one of them is entitled to it, and he the one who deserves to be regarded as the procuring cause of the sale by reason of his efforts having been an efficient proximate cause in its accomplishment, or, as otherwise expressed, the `predominating efficient cause' of such accomplishment." Murphy v. Linskey,94 Conn. 475, 478.
2. "The finding of a prospective purchaser is not the only service of the broker. A large part of his effort, perhaps the greater part, is in inducing either the purchaser to meet the seller's terms or price, or the seller to make concessions in the terms to meet the purchaser's wishes." Rosenfield v. Wall,94 Conn. 418, 421.
The defendant partners (Perkins and Walter) contend that the case of Housatonic Valley Insurance Agency, Inc. v. Klipstein, *Page 329 125 Conn. 274, is authority for sustaining their position at least as to a part of the commission due from the plaintiffs. The facts in that case are distinguishable from those present in the case at bar. The quoted principles of law have application to the facts of this case and are deemed to be determinative of the issues in favor of the defendant Cotter. As between the claims of the defendants a question of fact has been presented. SeeRoche v. Curtin, 131 Conn. 66, 68, and cases cited.
Had there been no break in the chain between Mrs. Cotter and the Morton-Smiths at the outset when the latter engaged Thoms to take up the first negotiation with the plaintiffs, the conclusion herein reached might be subject to revision. But there was a break in the chain of sufficient magnitude to remove Walter from any status of a predominating, efficient or effective procuring cause in the accomplishment of the ultimate sale. This aspect defeats the Perkins-Walter claim under any possible theory.
 Judgment will enter awarding the entire fund to the defendant Cotter less a deduction therefrom of $250 representing an allowance for counsel fee and reimbursement to the plaintiffs for expenses (sheriff fee, court entry fee, judgment fees, etc.) incurred in connection with the case. The fund to be turned over to the prevailing defendant by the plaintiffs, after the foregoing deduction, amounts to $2175. No costs are to be taxed in favor of or against any of the parties.
Counsel are commended for the industry of their preparation and the depth of their advocacy.